# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

BARKEWELL J. BECK,               )
                                 )
    Plaintiff,          )
                                 )
v.                               )    Case No. CV608-023
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social Security, )
                                 )
    Defendant.          )

## REPORT AND RECOMMENDATION

Barkewell J. Beck appeals to this Court the Social Security Commissioner's denial of his application for Supplemental Security Income (SSI) benefits. Doc. 1.[1] The Court should **AFFIRM** the Commissioner's decision.

## I. BACKGROUND

Born on July 19, 1948, eighth-grade educated and previously imprisoned, Beck filed applications for Title II disability insurance benefits and Title XVI SSI on August 4, 2003. Tr. 20, 21, 48, 56-58, 306-

---

[1] The Court will reference the administrative transcript (doc. 7) as "Tr."

313. The parties agree that Beck abandoned his originally claimed disability-onset date of May 11, 1998 in favor of a protected filing date of June 24, 2003, and thus his Title II claim was dismissed. Doc. 17 at 2 n. 2; doc. 12 at 3, n. 2; Tr. 332.

After the Commissioner denied Beck's application, an ALJ conducted an April 20, 2006 de novo hearing with Beck, who was represented. Beck's evidence covers his claims of arthritis, degenerative bone disease, cervical spine spurs, pain, and depression. *See* Tr. 20, 39. The ALJ found Beck not disabled; Beck unsuccessfully administratively appealed, then filed this action. Tr. 3.; doc. 1. He contends that the ALJ erred in disregarding a consulting doctor's opinion about Beck's incapacity, and further erred in determining that he could return to his "escort-driver" job. Doc. 12, 18.

## II. ANALYSIS

### A. Standard of Review

A multi-step process figures into the ALJ's decision. Summarized,

[a] person who applies for Social Security disability benefits must prove her disability. *See* 20 C.F.R. § 404.1512. The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). In steps one

and two, the claimant must show that [he] has not engaged in substantial gainful activity; and [he] must prove a severe impairment or combination of impairments. *Jones*, 190 F.3d at 1228. In step three, the impairment is compared to listed impairments; if the impairment meets or equals a listed impairment, disability is automatically established. *Id*. If step three's impairment listing does not establish disability, in step four the claimant must show an inability to perform past relevant work. *Id*. If the claimant makes a sufficient showing of inability to perform past relevant work, in step five the Commissioner bears the burden of showing other available work that claimant is able to perform. *Id*.

*Dixon* v. *Astrue*, 2009 WL 353300 at * 1 (11th Cir. Feb. 13, 2009) (unpublished) (footnote omitted).

This Court must affirm the ALJ's decision if his conclusions are supported by substantial evidence and proper application of the governing legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer*, 395 F.3d at 1210 (quotes and cites omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotes and cites omitted). And if substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates

against the Commissioner's findings." *Id*. at 1158-1159. The Court

cannot substitute its own judgment for the Commissioner's. *Barnes v.*

*Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). That is, it is

> the function of the Commissioner, and not the courts, to resolve
> conflicts in the evidence and to assess the credibility of the
> witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir.1971).
> Similarly, it is the responsibility of the Commissioner to draw
> inferences from the evidence, and those inferences are not to be
> overturned if they are supported by substantial evidence. *Celebrezze
> v. O'Brient*, 323 F.2d 989, 990 (5th Cir.1963).

*Lewis v. Astrue*, 2009 WL 464264 at * 2 (M.D.Fla. Feb. 24, 2009)

(unpublished). That is why this Court cannot reweigh the evidence, but

rather "is limited to determining whether the record as a whole contains

sufficient evidence to permit a reasonable mind to conclude that the

claimant is not disabled." *Id*. The Court need only "satisfy itself that

the proper legal standards were applied and legal requirements were

met. *Lamb v. Bowen,* 847 F.2d 698, 701 (11th Cir.1988)." *Id*.

## B.    The ALJ's Determination

In finding that Beck satisfied step one of the five-step analysis

(because he had not engaged in substantial gainful activity at any time

relevant to the decision), the ALJ paused to note that Beck had originally

claimed to have been disabled and unable to work as of May 11, 1998

"not because of any medical problem, but because he was 'sent to prison for 5 years [for child molestation].'" Tr. 20. As for step two, the ALJ found that Beck

> has the following severe impairments: The claimant has osteoarthritic changes of the cervical and lumbar spine with x-ray evidence of rotoscoliosis and degeneration of the cervical spine suggestive of congenital deformity. There is a remote history of a hand injury with some residual loss of grip and weakness (20 CFR [§§] 404.1520(c) and 416.920(c)).

Tr. 20. However, in extensively reviewing the medical evidence, the ALJ illuminated malingering, if not outright lying, on claimant's part:

> Following the hearing, the claimant underwent a consultative examination by Dr. Jeffrey Fried (Exhibit 8F). He said he had back, neck, shoulder, elbow and knee pain and that he had been in an accident in 1993, although I note that the claimant has told his treating sources that he incurred no injuries in this accident. He also said he had injured his hand in a sawmill accident in **1993** and had continued tingling, however, he told his previous treating source that he had injured his hand in **1982**. The evidence shows that he was able to work from the time he injured his hand, whether in 1993 or 1982, until he was sent to prison in 1998. Although the claimant said he had difficulty buttoning clothes and that his wife had to do this, this is contradicted by his other allegations, as well as by Dr. Wallace's finding that his manual function was preserved, as demonstrated by calluses on both hands, and that his activities such as buttoning and working with small pieces of equipment were **not** significantly impaired.

*Id.* at 23. In another passage, the ALJ states that:

[i]n March 2006 [claimant] was assessed with multipoint arthritis. There is *no* evidence of x-rays in Dr. Serrano's records, and the only x-ray evidence consists of the report ordered by Dr. Wallace in 2003 (Exhibit 7F). There is *no* evidence of record that the claimant has sought any medical care or treatment for his hand.

*Id.* at 22 (emphasis added). Beck does not challenge these specific findings, but despite the ALJ's illumination of claimant's lack of credibility, the Commissioner interprets the ALJ's findings to mean that Beck met step two (severe impairment) of the analysis. Doc. 17 at 5. Beck agrees. Doc. 12 at 6-7.

The ALJ next concluded that Beck does not meet the step three criteria (comparing Beck's impairments to a set of listed impairments), Tr. 24, and proceeded on to step four, first determining Beck's residual functional capacity. *See* 20 C.F.R. § 416.920(f) ("If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment, which we made under paragraph (e) of this section, with the physical and mental demands of your past relevant work."). Here again, the ALJ enumerated a series of contradictions:

In [a] Daily Living Questionnaire, [Beck] said he washed the dishes daily, but that it only took 20 minutes, yet he next said he did no household chores at all, only to admit to his treating source that he

actually kept himself busy doing household chores. The allegations by the claimant's wife are also not credible because in responses to a questionnaire on December 12, 2004, she affirmed the claimant's allegations and said he did not do any work in the yard, yet on July 29, 2003, the claimant admitted to Dr. Rumble that he stayed busy around home "doing yard work and other chores", although he has denied these activities in his reports to the Social Security Administration. In June 2004 he told Dr. Rumble that he had some joint pain after he had been "underpinning the house", again, activity inconsistent with his allegations to the Administration. Further, his employment/unemployment history and sporadic earnings are evidence that he is not inclined to work.

Tr. 25. On that score, the ALJ also found, inter alia:

The claimant has said he could not afford his medication because only his wife worked and she had to buy her own medication. The claimant's attorney submitted a list of the claimant's medication dated April 12, 2006, indicating that he took Lexapro and Ultram (Exhibit section E). She also said that the claimant had prescriptions for inhalers but "cannot afford them". I note, however, that the claimant has continued to smoke against medical advice and is able to afford two packs of cigarettes a day. Thus, the claim that he cannot afford medication is not credible. *Accordingly, I find that the claimant has not been fully credible.*

Tr. 25 (emphasis added). Despite Beck's lack of credibility, the ALJ concluded that he "has the residual functional capacity to perform a wide range of *light* exertional work." Tr. at 24. He made this finding after giving Beck "the benefit of the doubt" by dismissing the Social Security Administration's (SSA) "Site Agency's" determination that Beck could perform "*medium* exertional work." Tr. 24 (emphasis added).

After finding that Beck's "severe" disabilities still permitted him to perform light-exertion (hence, sedentary-based) work,[2] the ALJ denied Beck's claim, finding that Beck's residual functional capacity did not prevent him from performing his past relevant work.  Docs. 7 at 24; 12 at 7, 17 at 6.  In concluding that Beck could perform his past relevant work, the ALJ cited Beck's own testimony:

> The claimant testified that he worked for three years, until January 1995, as an escort vehicle driver for Adrian Home Builders. This work, as it is generally performed in the national economy, is sedentary. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it [in the manner that it] is generally performed.

*Id.* at 25; *see also id.* at 335 ("Q.  What did you do for Adrian Homes?  A. I was the escort driver").

---

[2] As the Eleventh Circuit explains:

Sedentary jobs are defined as those that generally require sitting. 20 C.F.R. § 404.1567(a); *Kelley v. Apfel*, 185 F.3d 1211, 1213 n. 2 (11th Cir.1999). However, sedentary work may require standing and walking occasionally, so long as the 'periods of standing or walking ... total no more than about 2 hours of an 8-hour workday, and sitting ... total[s] approximately 6 hours of an 8-hour workday.' *Kelley*, 185 F.3d at 1213 n. 2.

*Pritchett v. Comm'r Soc. Sec. Admin,* 2009 WL 449177 at * 5 (11th Cir. Feb. 24, 2009) (unpublished).

## C. Substantial Evidence Review

The ALJ erred, Beck argues, in disregarding the opinions of Dr. Fried, the consultative orthopedic examiner (the ALJ requested the consult) in finding that Beck retains a residual (sedentary work) functional capacity. Doc. 12 at 13. Fried's opinion, Beck contends, is consistent with Beck's claimed disability. Other doctors, Beck says, had diagnosed Beck with osteoarthritis, chronic back pain, multi-joint arthritis, hand deformity, and diminished hand strength, and in his examination, Dr. Fried made multiple positive findings, including decreased sensation in Beck's hands, shoulder weakness and limitation of motion, reduced range of motion in the neck and back, and positive straight leg raising bilaterally. "Contrary to the opinion created in the ALJ's decision," argues Beck, "positive and objective findings support Dr. Fried's conclusions. Such a conclusion is even more appropriate given that Dr. Fried was a specialist in the area of Mr. Beck's problems."[3] Doc. 18 at 5.

---

[3] Furthermore, Beck contends, the ALJ did not have the benefit of any vocational expert testimony. Without any information about the impact of the limitations that Dr. Fried agreed would restrict Beck's ability to perform his past

The ALJ fully evaluated the Dr. Fried evidence and rejected it based in no small part on Beck's contradictions:

> The claimant told Dr. Fried that he had last worked in May 1998 and had been unable to work since then, yet he did not mention that he began his five year incarceration in May 1998. Dr. Fried noted that [Beck] did drink alcohol, although the record indicates that he stopped drinking twenty years ago.

Tr. 23. The ALJ also considered and rejected the remainder of Dr. Fried's findings for lack of supporting medical evidence:

> Dr. Fried completed a physical capacities evaluation and opined that the claimant could lift less than 10 pounds frequently and 20 pounds occasionally due to upper extremity weakness and back pain. He could stand and walk six hours in an eight hour workday and could sit seven hours in an eight hour workday. He could occasionally climb ramps and stairs, but could not climb ladders, ropes and scaffolds because of a "history of knee pain", *not* due to any medically determinable knee impairment. He opined that the claimant could occasionally balance, stoop, crouch, kneel and crawl. He could occasionally reach, handle, and finger but could not feel with the upper extremities bilaterally, *however*, limitations due to the claimant's complaint of numbness are not based on medically

---

relevant work, it cannot be said that the ALJ in fact made an informed decision about Beck's ability to perform his past relevant work. Doc. 18 at 5.

The Court rejects Beck's arguments on this point. Courts have recognized that vocational experts are consulted, if not sometimes required, only at step five of the above-discussed decisional process. *See, e.g., Butler v. Apfel*, 1999 WL 595335 at * 6 n. 14 (9th Cir. Aug. 9, 1999) (unpublished); *Berna v. Chater*, 101 F.3d 631, 633 (10th Cir. 1996) ("At step five of the sequential analysis, an ALJ may relate the claimant's impairments to a VE and then ask the VE whether, in his opinion, there are any jobs in the national economy that the claimant can perform"). Beck's case was resolved at step four.

determinable findings such as electrodiagnostic studies. He opined that the claimant could push and pull ten pounds. He should avoid working with hazards because he took medication, and avoid working with concentrated vibrations due to back pain.

To the extent that Dr. Fried's opinions are based on limitations due to subjective symptoms and reported history of symptoms, for example pain and numbness, I find that they are *not* attendant with medical findings required to support a finding of functional limitation.

Tr. 23 (emphasis added).

The ALJ was entitled to discount medical evidence based on noted contradictions and the reasonable conclusion that Beck lied and exaggerated to various doctors,[4] thus fatally tainting their disability-

---

[4] ALJ's are authorized to make basic, bread-and-butter credibility determinations (as was done here) so long as they cite an evidentiary basis. *See, e.g., Pritchett*, 2009 WL 449177 at * 3; *Harris-Steinhoff v. Astrue*, 2008 WL 2789251 * 11 (W.D.Mo. Jul. 17, 2008) (unpublished). And courts, of course, owe deference to the ALJ's credibility findings if factually supported. *See Rogers v. Astrue*, 2009 WL 368386 at * 3 (10th Cir. Feb. 17, 2009) (unpublished); *Hornsby v. Astrue,* 2009 WL 890653 at * 9 (D.S.C. Mar. 30, 2009) (unpublished).

For that matter, the Eleventh Circuit has established a three-part "pain standard" that applies when a claimant attempts to establish disability through his own subjective complaints. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard, which logically applies to cases like this where subjective exertional limitations are claimed, requires evidence of: (1) an underlying medical condition, and (2) either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (b) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged subjective symptoms. *Id.* at 1223; *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986); *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir. 1986); 20 C.F.R. §§ 404.1529 and 416.929. Although "[t]he ALJ must consider the claimant's subjective

supportive opinions. Indeed, in the very next paragraph after examining

Dr. Fried's findings, the ALJ noted this:

> The consultative examiner, Dr. Wallace, assessed the claimant as having chest pain of unknown etiology, yet the claimant's chest pain complaint was that he experienced chest pain a total of *six seconds* a month. He has alleged disabling knee pain, *yet* x-rays are normal. The claimant has alleged disability due to shortness of breath, yet, other than one incident of bronchitis in July 2005, chest examinations have been normal and he has continued to smoke two packs of cigarettes a day. These are not medically determinable impairments.

Tr. 23-24 (emphasis original and added).

Beck conspicuously fails to cite *any* evidence negating the ALJ's

credibility findings (e.g., his own testimony or affidavit swearing under

oath that he never said such things to the various physicians), but

---

testimony," *Norris v. Heckler*, 760 F.2d 1154, 1157 (11th Cir. 1985), the issue of credibility is reserved to the Commissioner. *Boyd v. Heckler*, 704 F.2d 1207, 1210-1211 (11th Cir. 1983). "[A]n ALJ may properly challenge the credibility of a claimant who asserts he is disabled by subjective complaints. . . ." *Norris*, 760 F.2d at 1157; *Smallwood v. Schweiker*, 681 F.2d 1349, 1351 (11th Cir. 1982). However, if the ALJ chooses to discredit a claimant's testimony regarding objective symptoms, he must "articulate 'explicit and adequate' reasons for doing so." *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (quoting *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)); *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). Here the ALJ extensively detailed Beck's many contradictory statements to various doctors before rejecting disability-level conclusions. Beck points to nothing (e.g., the absence of evidentiary support) to disturb these findings.

instead rests on procedural arguments.[5]  Nor does he quarrel with the ALJ's finding that Dr. Fried's opinions may be discounted for the lack of any medical metrics (e.g., they were not based on medically determinable findings -- they lacked, for example, "electrodiagnostic studies").  Many of Dr. Fried's assessments, for that matter, are tentative and qualified. Tr. 296 (Beck "has *limited* motion of right shoulder and has frozen right shoulder with weakness, possible rotator cuff tear . . . .  he has *significant* psychiatric problems which may lead to further restrictions.").[6]  Having cited evidence to support his credibility determinations, the ALJ was free to discount Dr. Fried's opinion, and substantial evidence otherwise supports his decision.  *See, e.g.,* Tr. 224

---

[5]  Beck argues that "if the ALJ did not accept Dr. Fried's conclusions at all, it was incumbent upon him to obtain a replacement orthopedic evaluation."  Doc. 12 at 14.  The Court rejects this argument.  The burden is on Beck.  *Malloy v. Comm'r of Soc. Sec'y*, 306 F. App'x 761, 763 (3rd Cir. 2009) ("The claimant bears the burden of persuasion in the first four steps of the analysis").  For that matter, the ALJ ordered, on Beck's behalf, a free consultation with Dr. Fried.  Nothing in the governing statutes, regulations, or case law requires the SSA to keep ordering additional consultations in quest of evidence favorable to a claimant if the first wave rolls in adversely to him.

[6]  "Limited," "significant" and even "frozen" are words of degree, yet lack calibration.  Measuring mobility using an objective method, and showing (by objective measurements), that a patient has lost 95% sitting or bending or reaching capability, is what ALJ's need to support their findings.  Fried failed to supply that in his conclusions, and his "grid-chart" percentage-based findings regarding most body movements (bending, flexing, etc.) were for the most part normal-ranged.  Tr. 297-98.

(G. L. Cross, M.D.: "mild decrease in grip strength and dexterity. *calluses* on both hands")[7] (emphasis added); *id.* at 228 ("the severity alleged by the clmt is not supported by evidence in file"); *id.* at 233 (S. Wright, M.D.: "Allegations are partially credible. Allegation can't of no lifting [sic] is not consistent with medical evidence").

Substantial evidence therefore supports this portion of the ALJ's decision, so it must be affirmed. *Malloy*, 306 F. App'x at 765-66 (substantial evidence supported determination that disability claimant's pain was not so severe as to prevent her from performing a limited range of light and sedentary work; although claimant had medically determinable impairments, her allegations of debilitating pain and disabling limitations were *not* credible, since they were inconsistent with her regular activities, the medical treatment sought and received, the objective findings and test results of her examining physicians, and the

---

[7]   At Beck's hearing, the ALJ also studied Beck's hands (calluses obviously signify a capability for repetitive, if not sustained, manual-labor of some sort):

Q. Turn your hands around this way.  Looks like you use your hands quite a lot.  What are you using them for?

A.  I got, one of my boys, he took a transmission out and I tried to help with that slave cylinder on the front of it.

Tr. 340.

record evidence as a whole); *Redmond*, 2009 WL 863587 at * 3 ("the ALJ's decision indicates he thoroughly examined the objective and subjective evidence in the record, provides specific reasons for his credibility finding, and clearly sets out the weight accorded to claimant's statements. The ALJ determined that while claimant's objective medical impairments could reasonably be expected to produce the symptoms alleged, the claimant's statements concerning the intensity, duration, and limiting effects of these symptoms were not entirely credible. Upon de novo review, the court finds the ALJ's determination as to plaintiff's credibility was supported by substantial evidence and was reached through application of the correct legal standard.").

The ALJ also erred, Beck argues, by improperly concluding that Beck could perform his past relevant work. Specifically, the ALJ failed to properly develop the record regarding the actual duties of Beck's past work. Doc. 18 at 1. It is not enough, Beck further contends, for the ALJ to base this conclusion only on Beck's hearing testimony that he worked as an escort driver. *Id.* For example, the ALJ never asked Beck about the exertional demands of that job. Nor did he acknowledge other

documents that Beck completed in which he described the exact duties of his past work. *Id.*

At step four, the claimant bears the burden of demonstrating an inability to return to his past relevant work, but the ALJ has a concomitant duty to develop a full record. *See Lucas v. Sullivan*, 918 F.2d 1567, 1574 n. 3 (11th Cir. 1990). To that end, Social Security Rulings (SSR) 82-61, 1982 WL 31387, and SSR 82-62, 1982 WL 31386, which lack the force of law but are binding on an ALJ, *Smith v. Astrue*, 252 F. App'x 820, 823, n. 2 (9th Cir. 2007), assist the ALJ with criteria-based tests to ensure decisional accuracy[8] and thus ensure compliance with *Schnorr v. Bowen*, 816 F.2d 578 (11th Cir. 1987), which held that

---

[8] As the regulation explains:

Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. *Detailed* information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a *detailed* description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience.

SSR 82-62 (emphasis added).

"[w]here there is no evidence of the physical requirements and demands of the claimant's past work and no detailed description of the required duties was solicited or proffered, the [Commissioner] cannot properly determine whether the claimant has the residual functional capacity to perform [her] past relevant work." *Id.* at 581. It must be remembered, however, that this Court does not reweigh evidence, and that only substantial evidence need support an ALJ's determination. *McGregor v. Sec'y of Health and Human Serv.*, 1992 WL 276723 (6th Cir. Oct. 7, 1992) (unpublished).[9]

--------

[9]  There the Sixth Circuit upheld an "escort-driver" based finding:

Plaintiff also alleges error in the ALJ's conclusions with respect to residual work capacity. The ALJ found that plaintiff was capable of performing his previous job as an "escort/driver" for mobile home set-ups. In the alternative, the ALJ, relying on the testimony of a vocational expert, identified several fields encompassing thousands of jobs within the relevant economy for which plaintiff was eligible and capable. There was substantial evidence supporting both of these conclusions. Several examining physicians concluded that plaintiff was capable of light exertion work loads, and no physician found objective evidence of a medical condition precluding plaintiff from entry level, low exertion work. The vocational expert identified several occupations suitable for plaintiff. The ALJ concluded that plaintiff's impaired mental functioning did not render him disabled, either standing alone or in conjunction with his alleged physical ailments and limitations. That finding was supported by substantial evidence.

*Id.* at * 3.

Here, while it is true that the ALJ failed to explicitly cite any expert testimony, much less an established written source (e.g., the DOT), escort driving is universally accepted as light, sedentary work. *Wilson v. Astrue*, 2008 WL 4499634 at * 3 (W.D.Va. Oct. 7, 2008) (unpublished) ("an escort driver is one who escorts large modular homes down the highway, and the position is classified as 'light' work."). This is supported by the SSA's Dictionary of Occupational Titles (DOT). 1991 WL 687886 ("919.663-022 ESCORT-VEHICLE DRIVER"); *see also id.* ("Drives vehicle equipped with warning lights and signs to escort trucks hauling mobile homes on public thoroughfares: Precedes escort and maintains specified distance between pilot vehicle and escort to provide warning to other motorists and to clear traffic at locations. Communicates by two-way radio with truck and other pilot vehicle drivers to coordinate changes in speed and route, emergencies, or traffic congestion").

Hence, remand for the ministerial act of having the ALJ cite to the DOT would be wasteful and unnecessary.[10] *See Allen v. Barnhart*, 357

_____

[10]    As the Tenth Circuit recently noted, there is no set way to establish "vocational" facts. Sometimes a fixed source is consulted, sometimes live expert

F.3d 1140, 1145 (10th Cir. 2004) (recognizing the appropriateness of harmless error analysis in administrative cases), cited in *Hunter v. Astrue*, 2009 WL 1040126 at * 3 (10th Cir. Apr. 20, 2009) (unpublished); *see Joyce v. Astrue*, 2009 WL 313345 at * 4 (M.D.N.C. Feb 5, 2009) (unpublished) (recognizing that court need "not remand [when] there is [no reasonable] possibility that the claimant [w]ould be awarded benefits should the error be corrected."); *see also id.* (ALJ's error in failing to explain the consideration given to doctors' opinions was harmless as neither doctor made any attempt to support their disability opinions and neither opinion was supported by the record. Aside from a short-lived episode, social security disability claimant's medical records showed her mental impairments to be in remission).[11]

---

testimony suffices. *Rogers v. Astrue*, 2009 WL 368386 at * 4 (10th Cir. Feb. 17, 2009) (unpublished) ("The whole point of vocational testimony is to go beyond facts already established through publications eligible for judicial or administrative notice and provide an alternative avenue of proof."). Vocational facts found in established precedent are sufficient where not contested -- as is the case here. (Beck does not challenge what "escort driver" means in precedent and the DOT, only that the ALJ should have expressly cited escort-driver explanatory facts or a VE's testimony about same, since the ALJ failed to elicit sufficient facts about the position from Beck).

[11] Moreover, while it is true that the ALJ must detail "information about strength, endurance, manipulative ability, mental demands and other job requirements" in determining whether a claimant can return to past relevant work, SSR 82-62, those determinations were implicit in the ALJ's finding that Beck

The Court also rejects Beck's argument that the ALJ failed to acknowledge other documents that Beck completed in which he described the exact duties of his past work. Doc. 12 at 10. Beck points to Tr. 24 in insisting that Beck detailed his "Adrian Homes" work as requiring him to walk all day and lift 25-100 pounds. Doc. 12 at 10. However, that part of the record makes no mention of "escort driver," but instead references some sort of other laborer work. (Beck's handwriting is more or less illegible, though it surely does not even hint at "escort driver" work.) And in making a benefits determination, the ALJ need not specifically refer to every piece of evidence in his decision, *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005), provided it "contains sufficient reasons for all material findings of fact and conclusions of law that the reviewing court can discern what the ALJ did and why he did it." *Redmond v. Astrue*, 2009 WL 863587 at * 3 (E.D.N.C. Mar. 24, 2009) (unpublished).

---

retained the capacity to perform light work and that escort truck driving is, in fact, light, sedentary work. Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. *See* 20 C.F.R. § 404.1567(a).

## III. CONCLUSION

Accordingly, the Court should **AFFIRM** the Commissioner's decision to deny Beck Supplemental Security Income benefits.

**SO REPORTED AND RECOMMENDED** this  22nd  day of May, 2009.

/s/ G.R. SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA